IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **PAUL ANTHONY BERVID,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 08 C 7076 |
| **ANITA ALVAREZ, in her individual and official capacities; RICHARD A. DEVINE, in his individual and official capacities; ROBERT J. MILAN, in his individual capacity; ADRIENNE D. MEBANE, in her individual capacity; THE OFFICE OF THE STATE'S ATTORNEY OF COOK COUNTY, an agency of the State of Illinois; THE COUNTY OF COOK, an Illinois municipal corporation, body politic and unit of local government** | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brought a two count complaint seeking monetary damages and injunctive relief for age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 626 ("ADEA") (count I), and in violation of the equal protection clause of the Fourteenth Amendment under 42 U.S.C. § 1983 ("§ 1983") (count II).[1] Plaintiff claims to have been unlawfully terminated

---

[1]The complaint makes occasional reference to Title VII, as does plaintiff's brief in opposition to defendants' motion, but I do not construe the complaint as asserting an independent Title VII violation. The substantive allegations in count I clearly state: "This action is brought pursuant to the Age Discrimination in Employment Act (hereinafter "ADEA" or "Act"), 29 U.S.C. Sec. 621 *et seq.* as amended.") Moreover, in his opposition to defendants' motion, plaintiff describes the complaint as "asserting age

from his employment as an Assistant State's Attorney ("ASA") with defendant Office of the State's Attorney of Cook County ("OSA" or the "Office"), and that the remaining defendants participated in his termination. Defendants have moved to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, the motion is granted.

I.

According to the allegations in the complaint, plaintiff began as an ASA with the Office in June of 1993. On or about June 14, 2006, defendant Devine observed, in the course of a meeting with plaintiff, that some ASAs were "retired but coming to work every day" and stated that he was going to cut the older, "dead wood" to make room for the advancement of the younger attorneys.

In December 2006, in response to budget reductions, Devine circulated a memorandum to all ASAs, in which he stated that if personnel cuts became necessary, the cuts would be based on performance evaluations. Throughout his employment at OSA, plaintiff consistently received ratings of "highly qualified" or "qualified" on all of his performance evaluations, and for the last three years in which he was evaluated, he received ratings of

---

discrimination under the ADEA and the Equal Protection Clause." In a footnote, plaintiff explains that because "there is little legislative history to interpret the ADEA...the legislative history of Title VII can be reviewed for guidance." For these reasons, I presume that plaintiff's occasional references to Title VII are intended to support his ADEA claim, not to assert an independent statutory violation.

"highly qualified" in every category. Nevertheless, at a meeting on February 16, 2007 (at which none of the individual defendants was present), plaintiff was informed, without explanation, that he would be terminated effective March 2, 2007. Plaintiff was forty-seven years old at the time. He claims that a total of forty-three ASAs were terminated on that date, of whom twenty-eight were over age forty.

Plaintiff appealed his termination pursuant to the review process explained to him at the February 16 meeting. On or about April 11, 2007, plaintiff received a telephone call from Gerald Nora, Executive Assistant for Policy, who told plaintiff that "the Defendants had made a mistake and that Plaintiff would be rehired." Two weeks later, plaintiff received a letter stating substantially the same information. Thereafter, plaintiff made three telephone calls in attempt to have his employment reinstated; but messages he left were not returned, and plaintiff was not rehired.

On or about July 26, 2007, plaintiff filed a complaint against ASA with the Illinois Department of Human Rights and the United States Equal Employment Opportunity Commission. He received a "right to sue" letter from the EEOC on September 11, 2008.

Plaintiff asserts that at the time defendants terminated him, they were planning to hire as many as seventy new attorneys in 2007, "who would be cheaper than the experienced attorneys like Plaintiff and those being terminated in March 2007." Plaintiff

alleges that in fact, OSA hired thirty new attorneys in May of 2007, all of whom were under age forty, and by the end of 2007, defendants had hired over seventy new ASAs. All but five of the new hires were under age forty, and the majority "were paid far less" than the terminated ASAs. Between May and July of 2007, however, OSA paid "parity raises" to "almost" every ASA then employed by the Office (amounting to as much as $6,000 per year per person), and in August of 2007, the Cook County Board granted cost of living increases to many employees, including ASAs.[2]

Plaintiff claims that the "so called budget crisis" that prompted the March 2007 terminations was a "subterfuge," since defendants knew at the time of plaintiff's termination that ASAs at the Office would be receiving pay increases. Plaintiff also claims that he was not hired personally or directly by any State's Attorney; that his age was a factor in the decision to terminate him; that defendants discriminated against him intentionally and maliciously; and that he suffered damages as a result.

Defendants raise a number of arguments in their motion to dismiss. First, they contend that plaintiff was not an "employee" as that term is defined in ADEA and thus does not fall within the scope of the statute's protections. On this basis, defendants seek dismissal of plaintiff's ADEA claim in its entirety. Defendants

---

[2]The alleged terms of these increases, though alleged in the complaint, are not relevant to my resolution of the pending motion.

also argue that because ADEA does not provide for individual liability, even if plaintiff were deemed an employee under the statute, his claim must be dismissed against the individual defendants.

As to plaintiff's equal protection claim under § 1983, defendants argue that plaintiff has pled himself out of this claim by alleging facts that demonstrate defendants had a rational basis for his termination, which is all that is required to survive constitutional scrutiny. In other words, defendants argue that on its face, the complaint shows that plaintiff suffered no constitutional violation. Defendants also argue that in any event, qualified immunity shields them from liability for the putative violation and that the complaint fails to plead that the individual defendants acted with the requisite intent to deprive plaintiff of a constitutional right. Finally, defendants argue that Cook County should be dismissed from the case because the complaint contains insufficient factual matter to support liability against this defendant.

## II.

A motion to dismiss tests the sufficiency of a complaint, not its merits. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In resolving a motion under Rule 12(b)(6), I must accept all well-pleaded allegations in the complaint as true and consider the facts in the light most favorable to the plaintiff. *Americanos v.*

5

*Carter,* 74 F.3d 138, 140 (7th Cir. 1996). The plaintiff must, nevertheless, allege sufficient factual material to suggest plausibly that he is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

A. ADEA

Defendants' broadest challenge to plaintiff's ADEA claim is that because plaintiff was not an "employee" as that term is defined in the statute, he is not entitled to its protections. The statute provides:

> The term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or *an appointee on the policy making level* or an immediate advisor with respect to the exercise of the Constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency, or political subdivision.

29 U.S.C. § 630(f) (emphasis added). Defendants contend that as an ASA, plaintiff was excluded under the "policymaking appointee" exception, embodied in the italicized text above, to ADEA's definition of employee.

Defendants base their argument on the analysis established in the "political patronage" cases *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980). In those cases, the Supreme Court articulated standards for determining when politically motivated employment actions, including termination,

6

are justified by the government's interest in "maintaining governmental effectiveness and efficiency," despite the obvious encroachment of such actions on individual First Amendment interests. *Branti*, 445 U.S. at 517 (citing *Elrod*, 427 U.S. at 366). Defendants' reliance on political patronage cases is appropriate: the Seventh Circuit has repeatedly held that the analysis used in such cases applies equally to the question of whether an individual falls within the ADEA (or the substantially similar Title VII) exemption for employees who are "appointee[s] on the policy making level." *Americanos v. Carter*, 74 F.3d 138, 144 (7th Cir. 1996) ("the reasons for exempting the office from the patronage ban apply with equal force to the requirements of the ADEA" (quoting *Heck v. City of Freeport*, 985 F.2d 305, 310 (7th Cir. 1993)).

In *Americanos*, the court applied the "*Elrod/Branti* doctrine" to analyze whether the plaintiff--an Indiana Deputy Attorney General--fell within the purview of the ADEA and Title VII. The court articulated the relevant inquiry as "whether the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation," *Americanos*, 74 F.3d at 141 (quoting *Heideman v. Wirsing*, 7 F.3d 659, 663 (7th Cir. 1993). The court went on to explain that this inquiry focuses on "the 'powers inherent in a

7

given office,' rather than the actual functions the occupant of that office performed." *Americanos*, 74 F.33d at 141 (quoting *Heck*, 985 F.2d at 309, in turn quoting *Tomczak v. City of Chicago*, 765 F.2d 633, 641 (7th Cir. 1985)). Accordingly, because the court found that "the statutory scheme governing the Office of the Attorney General" provided that each Deputy Attorney General was authorized to act on behalf of the state and "could *potentially* be called upon to perform" the duties of the Attorney General, 74 F.3d at 141 (original emphasis), it rejected the plaintiff's argument that the factual record did not support the conclusion that his job responsibilities in fact included providing meaningful input into policymaking. *Id*. Based on this analysis, the court concluded that the plaintiff was outside the scope of the ADEA's protections. *Id*. at 144.

Plaintiff argues that defendants' reliance on political patronage cases is "misdirecting," and that *Americanos* is not controlling. Plaintiff urges me to adopt instead the Second Circuit's analysis in *Tranello v. Frey*, 962 F.2d 244, 249 (2nd Cir. 1992), which plaintiff characterizes as construing exemptions under ADEA narrowly, and requiring that the aggrieved employee be personally appointed by an elected official to a policymaking position. Plaintiff argues that under this test, he is not excluded from ADEA unless: 1) he was personally and directly appointed by the State's Attorney, and 2) his position was on the

"policy making level." Plaintiff asserts that neither condition is supported by his complaint.

Plaintiff points to three district court cases from this circuit, *Levin v. Madigan*, 07 C 4765, 2008 WL 4287778 (N.D. Ill., Sept. 12, 2008) (Coar, J.), *Pahmeier v. Marion Community Schools*, No. 1:04-CV-365-TS, 2006 WL 1195213 (N.D. Ind., May 1, 2006) (Springmann, J.), and *O'Neill v. Indiana Commission on Public Records*, 149 F.Supp.2d 582 (S.D. Ind. 2001), as evidencing a "trend" toward adopting the Second Circuit's *Tranello* analysis. He then argues that when the facts he alleges are construed in his favor, defendants' motion must be denied, consistent with the holdings of these cases.

Even assuming that plaintiff's articulation of the *Tranello* test is accurate, his characterization of *Levin, Pahmeier,* and *O'Neill* holdings as demonstrating a "trend" toward adopting that test is a bit misleading. *Levin*, in particular, explicitly declined to apply *Tranello*'s analysis to the question of whether the plaintiff in that case held a "policymaking" position, noting that *Americanos* governs the issue in this circuit. *Levin*, 2008 WL 4287778 at *2-*3. Accordingly, the *Levin* court rejected the very argument plaintiff raises here: that he was not in a "policymaking" position because he had no immediate, close personal relationship with the State's Attorney. *Id*. The *Levin* court acknowledged, however, that the Seventh Circuit has not yet

9

addressed whether an individual "must actually be appointed by an elected official directly in order to be an 'appointee on the policy making level.'" *Levin*, 2008 WL 4287778 at *4, an observation the *O'Neill* court had also made several years earlier. *O'Neill*, 149 F.Supp.2d at 587. Having identified this narrow ground for discretion, the *Levin* court examined the statutory language of ADEA (and Title VII) and concluded that "although the language in *Americanos* suggests that if an individual is an employee under the *Elrod/Branti* doctrine, the court's inquiry ends," the text of ADEA requires a further step in the analysis to determine whether the employee was also an "appointee." Here, the *Levin* court cited *Pahmeier* and *O'Neill*, both of which turned on the issue of whether the plaintiff had been directly appointed by an elected official, and which discussed the *Tranello* analysis with approval on this point. The *Levin* and *O'Neill* courts found additional support for limiting the *Elrod/Branti* analysis in ADEA cases to "the confines of the statutory language" in Justice White's opinion in *Gregory v. Ashcroft*, 501 U.S. 452, 481 (1991) (White, J., concurring) (concluding "based on simple statutory construction" that ADEA excludes "persons appointed by elected officials to be on the policymaking level"), and in *Halloway v. Milwaukee County*, 180 F.3d 820, 828 (7th Cir. 1999), where the court held that although the plaintiff's position would ordinarily be excluded under the *Elrod/Branti* analysis, it was not excluded

10

under ADEA because it was subject to state civil service laws--a statutory limitation.

I need not speculate, however, about whether the Seventh Circuit would adopt the bifurcated analysis embraced by the *Levin* and *O'Neill* courts, in which *Elrod* governs the policymaking issue, but the language of the statute limits the employee exclusion to direct appointees. In this case, Seventh Circuit and Illinois law compel the conclusion that plaintiff was *both* in a policymaking position *and* appointed by the State's Attorney.

Having clarified that the authorities on which plaintiff relies do not speak to whether plaintiff was in a policymaking position under the controlling law of this circuit, but only to whether he might nevertheless escape the conclusion that he is exempt from ADEA, I turn to the authorities that bear upon the first question. The first major obstacle for plaintiff is the Seventh Circuit's opinion in *Livas v. Petka*, 711 F.2d 798, 800-01 (7th Cir. 1983), in which the court held that an Assistant State's Attorney in Illinois--the very position plaintiff held in this case[3]--falls within the category of exempt policymaking employees under *Elrod* and its progeny. The court examined the ASA office and concluded that it was inherently a policymaking position. The court reasoned that a State's Attorney has broad discretion "to

---

[3]The ASA in *Livas* worked for the office of Will County, not Cook County, but since state law governs the relevant issues, this difference is immaterial.

11

set whatever policies he or she believes necessary" and that these policies are necessarily implemented by Assistant State's Attorneys, who may, in carrying out their duties, "make some decisions that will actually create policy," *Livas*, 711 F.2d at 801. Indeed, as the Seventh Circuit later observed, "[u]nder Illinois law Assistant State's Attorneys are surrogates for the State's Attorney. Assistant State's Attorneys 'possess the power in the same manner and to the same effect as the State's Attorney.'" *McGrath v. Gillis*, 44 F.3d 567, 571 (7th Cir. 1995)(quoting *People v. Tobias*, 125 Ill.App.3d 234, 242, 465 N.E.2d 608, 615 (1984)). As noted above, in *Americanos*, the court held that even the *potential* that a Deputy Attorney General could be called upon to perform the duties of an elected officer was sufficient to exempt the deputy's office from ADEA. *McGrath*'s statement of Illinois law suggests that the *Americanos* analysis applies *a fortiori* with respect to ASAs. This settles the question of whether plaintiff was in a policymaking position. As a matter of law, he was.[4]

---

[4]This analysis reveals why plaintiff's citation to *Moss v. Martin*, 473 F.3d 694 (7th Cir. 2007), is inapposite. In *Moss*, the plaintiff held the position of Chief of the Highway Sign Shop within the Bureau of Operations of the Illinois Department of Transportation. The court declined to hold, at the pleadings stage, that the plaintiff was excluded from the ban on political patronage firings, explaining, "while the Highway Sign Shop is within the Bureau of Operations, we do not know where the Chief of the Highway Sign Shop falls within IDOT's overall hierarchy. We do not know what policies the Chief implements.... We do not know Moss's salary. We do not know what contract, if any, the Chief of

That leaves only the question of whether plaintiff might nevertheless escape the conclusion that he is exempt from ADEA because he was not personally or directly appointed by the State's Attorney. Here again, Illinois law stands in plaintiff's way. 55 ILCS 5/4-2003 provides that "assistant State's Attorneys are to be named by the State's Attorney of the county, and when so appointed shall take the oath of office in the same manner as State's Attorneys and shall be under the supervision of the State's Attorney." This statute immediately distinguishes plaintiff's case from *O'Neill*. In that case, the plaintiff was the Deputy Director of Indiana Commission on Public Records, a position that had been established by the Director of that Commission, pursuant to a statute providing that the Director, "subject to the approval of the governor and the budget agency, shall appoint such staff as necessary...." Ind. Code § 5-15-5.1-4(b) (quoted in *O'Neill*, 149 F.Supp.2d at 590). The *O'Neill* court explained that the plaintiff's position was "not a creature of state statute, but rather the collaborative design of [the Director] and [plaintiff]. The Deputy Director position is accountable exclusively to and appointed by the Director, who is not an elected official." *Id*. By contrast, the position of ASA is indeed a "creature of state

---

the Highway Sign Shop has with public officials or citizens regarding signs." No such uncertainties plague the office of Assistant State's Attorney.

13

statute," and that statute provides that he was both appointed by and accountable to an elected official.

Plaintiff's case is less starkly distinguishable from *Levin*, but it is nevertheless materially distinct. The *Levin* plaintiff was a Senior Assistant Attorney General in the Consumer Fraud Bureau of the Illinois Attorney General's Office. He was hired for that position by the Chief of Consumer Protection, with the approval of the Deputy Attorney General for Civil Litigation. The court concluded that under these circumstances, the plaintiff had not been appointed by an elected official. It appears from the court's analysis, however, that the *Levin* defendants argued only that the Attorney General had "the power to appoint Assistant Attorney Generals," relying on the 1925 Illinois Supreme Court case of *Saxby v. Sonnemann*, 149 N.E. 526, 318 Ill. 600, 607 (1925). *Levin*, 2008 WL at *4). By contrast, defendants in this case contend that the State's Attorney is *exclusively* authorized to appoint ASAs, citing 55 ILCS 5/4-2003. It is true that on its face, this statute empowers only State's Attorneys to appoint Assistant State's Attorneys, and it further provides that ASAs are "under the supervision" of the State's Attorney. The court in *Levin* apparently was not presented with a similar statute relating to the Attorney General. It seems to me that plaintiff cannot claim, consistently with 55 ILCS 5/4-2003, that he was not appointed by the State's Attorney. Accordingly, he cannot escape

14

the conclusion that he is exempt from ADEA, even under the *Levin* and *O'Neill* courts' analysis.[5]

For the foregoing reasons, plaintiff's ADEA claim fails in its entirety, and I need not consider defendants' remaining arguments for dismissal of that claim.[6]

## B. Section 1983

Turning to plaintiff's equal protection claim, I again begin by addressing defendants' broadest challenge: that plaintiff pleads himself out of his claim by alleging a rational basis for considering plaintiff's age in the decision to terminate him. In particular, defendants point to plaintiff's allegation that defendants planned to hire "younger attorneys who would be cheaper than the experienced attorneys" like plaintiff.

Plaintiff does not dispute that defendants' use of age as a factor in deciding to terminate him is subject to the rational basis standard of constitutional scrutiny. In fact, plaintiff

---

[5]Curiously, although the *Pahmeier* court cited *Tranello* approvingly, it made no reference to the *Elrod/Branti* doctrine or to *Americanos*, much less did it acknowledge the tension between *Tranello* and the controlling law of this circuit. Accordingly, it is less persuasive than *Levin* and *O'Neill*.

[6]At the tail end of his lengthy substantive argument, plaintiff tacks on a paragraph asserting that defendants waived the argument that plaintiff is not an employee under ADEA because they did not raise that argument in administrative hearings before the EEOC. Neither of the cases plaintiff cites, *Dyer v. Radcliffe*, 169 F.Supp.2d 770 (S.D. Ohio 2001), and *Buck v. Hampton Township School Dist.*, 452 F.3d 256 (3rd Cir. 2006), remotely supports his position, and I conclude that it warrants no discussion.

appears to acknowledges this standard in his complaint, alleging that defendants "had no rational basis for using age to terminate plaintiff's employment." The Supreme Court has indeed held that age is not a suspect classification that would require more searching review. *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991) (citing cases). Nor does plaintiff assert that a fundamental right is at stake. Defendants' bar is thus a low one: the alleged age-based classification "'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could supply a rational basis for the classification.'" *Heller v. Doe*, 509 U.S. 312, 320 (1993) (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)). Moreover, defendants have "no obligation to produce evidence to sustain the rationality" of the challenged classification, *Heller*, 509 U.S. at 320, and the burden is on the one challenging it to negate "every conceivable basis which might support it," regardless of whether the basis has any foundation in the record. *Id.*

Defendants argue that the complaint itself provides a rational basis for the challenged classification, since it alleges that hiring younger attorneys would be "cheaper" for Cook County. To the extent plaintiff responds to this argument at all,[7] he

---

[7]Plaintiff appears to have misapprehended the nature of defendants' argument, devoting most of the portion of his brief relating to the § 1983 claim to the argument that ADEA is not the

16

insists that the budget crisis was a "subterfuge to provide cover to fire" plaintiff and other, primarily older employees. While this argument might have traction in an ADEA claim, where plaintiff could prevail if he could prove (among other things) that the budget crisis were merely a pretext for age-based firings, it has none in the constitutional context, where the state need not demonstrate any factual basis to support its classification, so long as some conceivable rational basis exists. Regardless of whether the budget was in "crisis," the government has a legitimate interest in conserving its fiscal resources. *Kastel v. Winnetka Board of Education, Dist. 36*, 975 F.Supp. 1072, 1084 (N.D. Ill. 1997) (decision not to re-hire retirees to conserve school district resources rationally related to legitimate interest). Accordingly, even assuming the budget crisis were a sham, plaintiff still would not have a viable equal protection claim.[8]

For the foregoing reasons, plaintiff cannot prevail on his § 1983 claim based on the allegations in the complaint, and I need

---

exclusive remedy for age discrimination suits and does not preempt § 1983. It is clear defendants have advanced no such basis for dismissal.

[8]Although not raised by defendants, plaintiff's complaint suggests at least one other rational basis for an age-based classification. Plaintiff claims that defendant Devine stated he intended to cut the older "dead wood" to make room for the advancement of younger attorneys. Presumably, the state has a legitimate interest in replacing unproductive employees (i.e., "dead wood") with more ambitious ones.

not address defendants' remaining arguments for dismissal of this claim.

V. Conclusion

For the reasons set forth above, defendants' amended motion to dismiss is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated:    August 20, 2009